UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHAHRAM MALEKPOUR,

    Plaintiff,

v.

ANTHONY FOXX, Secretary of Department
of Transportation,

    Defendant.

No. 12 C 6569
No. 12 C 6999
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shahram Malekpour, a Federal Aviation Administration employee, brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging that he was subjected to race, national origin, and religious discrimination, as well as retaliation and hostile work environment.

Currently before me is Defendant's motion for summary judgment. Because Malekpour has failed to present sufficient evidence to defeat summary judgment on any of his claims, I am granting Defendant's motion and dismissing this case.

**BACKGROUND**

Malekpour was employed by the Federal Aviation Authority ("FAA") since 2004 as an aerospace engineer. His work involves reviewing changes to aircraft designs requested by aircraft and helicopter manufacturers to determine if the changes are appropriate. Malekpour is an Iranian-American male and Muslim.

At all times relevant to Malekpour's claims, Mary Ellen Schutt was the branch manager of the aircraft structure group (Malekpour's first-line supervisor); Royace Prather was the office manager for the aircraft certification office (Malekpour's second-line supervisor); and

Evangelia Kostopolos was the senior composite engineer, a non-supervisory co-worker.

The first alleged incident occurred in August 2005 when Prather ordered Malekpour to a meeting in Prather's office at the end of the day concerning an issue with the shipment of elastic blade dampeners. After Malekpour stated that he needed to catch his bus, Prather replied, "If you stay your course, I fire your ass out of this office."

The next two incidents occurred over a year later in October 2016 when Kostopolos embarrassed him by insinuating in a loud and angry tone in front of Malekpour's colleagues that he lacked knowledge and that she had to do his work and Prather told Malekpour that he would not last long in the organization.

The next few events occurred seven months later when Malekpour's name was removed from a key document related to the Enstrom project in May 2007. Two months later, in July 2007, Malekpour was informed of his reassignment to the position of aircraft structural engineer.

Things began to warm up in August 2007 when Malekpour's initial request for compensatory time was denied and later approved after he filed a grievance in November 2007. After Malekpour filed a grievance, he and several fellow FAA employees were informed that, due to a new interpretation of the FAA's policy on travel compensatory time, they were being awarded 4 hours, 2.3 hours, 5 hours, and 1.25 hours, respectively. Malekpour was awarded an additional 4 hours of compensatory time by Prather after Prather reviewed Malekpour's grievance. This result followed email communications that Prather and Schutt had with other FAA officials regarding the correct interpretation of the compensatory-time policy.

Around this time, Kostopolos treated Malekpour rudely while Malekpour was on the phone and accused him of not being a team player. After Malekpour complained, the Equal

Employment Opportunity ("EEO") office for the FAA was reluctant to schedule a mediation for his informal complaint so as to avoid incurring travel expenses for a mediator. Malekpour testified that he felt the FAA mediators were not neutral. When Schutt and Prather had a conversation with Malekpour in his cubicle on the topic of where the mediator would come from, Malekpour felt that he was physically threatened by Schutt and Prather because they stated there could be consequences. Malekpour testified that neither Schutt nor Prather verbalized a physical threat.

Malekpour received a performance appraisal for the period ending September 30, 2007, where he alleges that he was unjustly accused of delaying the Enstrom project. Malekpour was rated "Meets Expectations" and the review did not affect his basic salary or compensation. The appraisal also noted praise from a company with whom Malekpour worked during the period. Malekpour and Schutt engaged in an email exchange in February 2008 further discussing why Schutt felt Malekpour had responsibility for the delay to the Enstrom project.

After arriving fifteen minutes late to the office on August 20, 2008, Greg Michalik, an FAA supervisor, asked Malekpour to take personal leave because of his tardiness. Following a conversation with Michalik, in which Malekpour explained that he was part of a van pool that was late and that Malekpour went to the bathroom immediately upon reaching the office that morning, Michalik rescinded the demand for the use of personal leave.

Malekpour testified that he filed a "hotline" complaint with the FAA concerning the Enstrom issue and that on or about June 30, 2008, Malekpour received a phone call from the director of the office of accident investigation at FAA, Steve Wallace, where he was informed that his "hotline" complaint was not valid. John J. Hickey, director of aircraft certification services, had previously prepared a memo on June 3, 2008, responding to Malekpour's concerns

and finding that the FAA had acted appropriately in regard to the Enstrom issue.

At some point during all of this, Malekpour claims that someone placed a post-it note on his desk with the word "hostage" on it.

Malekpour's midterm evaluation had been scheduled with Schutt by way of a series of emails between them in June of 2009. Malekpour had requested that the review be done with Schutt's office door open, to which she had agreed. Malekpour felt that he was bullied by Schutt into going into his 2009 midterm evaluation without prior knowledge of issues for discussion, was criticized for his professional judgment, and was accused of not working independently. Malekpour testified that he was intimidated by Schutt's facial expression during the meeting and walked out. Schutt wrote on the notes for the meeting that if Malekpour wished to resume discussion, her "door was open, literally and figuratively."

Malekpour took offense when Schutt wrote a comment on one of his memos that "Here, you contradict yourself. The mod is either so large it requires an STC or it doesn't. You can't say this has to be an STC in one breath, but, with DER appvd data, it's a field approvable mod in the next breath. That makes us look like we're chicken to evaluate the data we've been given here." Malekpour received a review of "Meets Expectations" from Schutt on or about November 16, 2009.

Over a year later, Malekpour was suspended for ten days without pay beginning on May 23, 2011, for personal use of his FAA credit card. According to Malekpour, he was wrongfully suspended because he was informed by James Whitlow, FAA deputy chief counsel, that he could use the FAA credit card for expenses for a job search as part of a "global settlement" of his workplace complaints. After his suspension, Malekpour claims that information regarding his suspension was put into the public record by the Department of Labor,

which affected his ability to refinance his house and, he believes, caused him to go through a foreclosure.

## LEGAL STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

I consider the record in the light most favorable to the non-moving party, and I draw all reasonable inferences in the non-movant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir.2002). I will accept the non-moving party's version of any disputed fact, however, only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers,*

*Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

**DISCUSSION**

Malekpour brings claims for race, national origin, and religion discrimination, as well as retaliation and hostile work environment.

**I.       Discrimination Claims**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff bringing a Title VII discrimination claim can defeat a motion for summary judgment by way of the direct or indirect method of proof. *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1068 (7th Cir. 2012). Using either the direct or indirect method of proof, however, Malekpour has failed to present enough evidence of discrimination to defeat summary judgment.

**A.       Direct Method**

Under the direct method of proof, Malekpour must marshal sufficient direct or circumstantial evidence of a discriminatory motive behind his employer's action. *See Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Direct evidence is akin to an explicit admission that an employment decision was motivated by discrimination. *See Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011). Direct evidence of discriminatory intent is rare, *id.*, and Malekpour has clearly failed to present any direct evidence here.

Instead, Malekpour offers circumstantial evidence related to Defendant's alleged inappropriate behavior treatment. To survive summary judgment, this evidence must create "a convincing mosaic . . . that would allow a jury to infer intentional discrimination by the

decisionmaker." *Silverman v. Bd. of Educ. of the City of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011). Circumstantial evidence of discrimination may include: (1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action. *Darchak v. City of Chicago Bd. of Ed.*, 580 F.3d 622, 630 (7th Cir. 2009); *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720-21 (7th Cir. 2005). To be convincing, Malekpour's collection of circumstantial evidence must "directly point to a discriminatory reason for the employer's action and also be directly related to the employment decision." *Whitfield v. Int'l Truck and Engine Corp.*, 755 F.3d 438, 443 (7th Cir. 2014).

The problem with Malekpour's argument is that there is nothing wrong with most of his supervisors' alleged behavior. Most of Malekpour's allegations are different variations of him being criticized for his work product and work ethic. Specifically, Malekpour's claims of discriminatory conduct include the following: (1) a supervisor ordered him to a meeting about elastic blade dampeners and stated that if Malekpour "stay[ed] his course," he would "fire [his] ass out of this office"; (2) a co-worker insinuated that Malekpour lacked knowledge and that she had to do Malekpour's work; (3) a supervisor stated that Malekpour would not last long in the organization; (4) an unknown person removed Malekpour's name from a document and the document was revised; (5) a supervisor told Malekpour that he was responsible for delaying a project and that Malekpour was not a team player; (6) Malekpour received a reassignment that did not affect his pay; (7) requests by Malekpour for compensatory time were denied and then later granted; (8) a co-worker treated him rudely while he was on the phone and told Malekpour that he was not a team player; (9) the EEO office for the FAA was reluctant to schedule a

7

mediation on his informal complaint, and Malekpour believes that his supervisor picked the mediator because he saw the two of them speaking to each other multiple times; (10) Malekpour had a disagreement with his supervisors over the mediator and was told there could be "consequences"; (11) Malekpour's performance appraisal for 2007 accused him of delaying a project; (12) Malekpour was asked to take personal leave for a 15-minute delay in arriving at the office, which was later rescinded when the supervisor learned he was in the van pool; (13) a supervisor criticized Malekpour's acceptance of the design of two different aircraft parts; (14) someone placed a post-it note on Malekpour's desk with the word "hostage" written on it; (15) Malekpour was ordered into a performance review in which his work was criticized; (16) the word "chicken" was used in a critique of Malekpour's work product; and (17) Malekpour's personal information was put into the public record by the Department of Labor after his ten-day suspension.

This is far from a convincing mosaic. The conduct is spaced out over six years, and there is no evidence that any of the alleged conduct was tied to race, national origin, or religion. Furthermore, apart from Malekpour's ten-day suspension, Malekpour can point to no adverse action that resulted from any of his claimed discriminatory criticisms and interactions. An adverse employment action must be materially adverse, not merely an inconvenience or a change in job responsibilities. *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). The adverse employment action must significantly alter the terms and conditions of the employee's job. *Id.*

There is no evidence, apart from Malekpour's own suppositions, that links any of these interactions with his FAA colleagues to a discriminatory animus, so his claim fails under the direct method of proof.

**B.    Indirect Method**

Malekpour also attempts to defeat summary judgment by establishing a prima facie case of discrimination using the indirect, burden-shifting method of proof. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 504 (7th Cir. 2014).

Under the indirect method, Malekpour must first establish four requisite elements: (1) he belongs to a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of his protected class were treated more favorably. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 591–92 (7th Cir. 2008); *Brewer v. Board of Trustees of the University of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). After this is accomplished, a presumption of discrimination shifts the burden of proof to the employer to articulate a legitimate non-discriminatory reason for its action. *Johnson v. Gen. Bd. of Pension & Health Benefits of the United Methodist Church*, 733 F.3d 722, 727–28 (7th Cir. 2013). An employer's legitimate non-discriminatory reason, if one is articulated, shifts the burden back to the plaintiff to show that the proffered reason is pretextual, which would then permit an inference that the employer's real reason was unlawful. *Id.*; *Nichols v. Southern Ill. Univ.-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007).

Malekpour cannot proceed under the indirect method here because he cannot identify a person outside of his protected class who is similarly situated to him and who was treated better. Generally, an employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Hanners v. Trent*, 674 F.3d 683, 693 (7th Cir. 2012). For his

9

national origin, race, religion, and retaliation claims, Malekpour must therefore identify a co-worker either outside of his national origin, race, or religion, or someone who did not engage in protected activity, with similar background, experience, and performance. Malekpour has failed to do this, and failure to establish any single element of the *prima facie* case dooms a discrimination claim. *See Bio v. Federal Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005).

Even if Malekpour could produce evidence establishing a *prima facie* case, the FAA's legitimate and non-pretextual reasons for its 10-day suspension of him support summary judgment in its favor. Pretext is a deliberate falsehood. *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006). To show pretext, the employer's decision must be more than mistaken, ill-considered, or foolish; as long as the employer honestly believes those reasons, pretext has not been shown. *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006). The FAA made its decision to suspend Malekpour for ten days when personal charges showed up on his FAA credit card, and Malekpour failed to justify them.

## II.     Retaliation Claims

Under Title VII's anti-retaliation provision, it is unlawful for an employer to discriminate against an employee for opposing an unlawful employment practice. 42 U.S.C. § 2000e-3(a). Retaliation may be shown under either (1) the direct method, with evidence tending to show that the employer acted for retaliatory reasons, or (2) the indirect method, which raises an inference of retaliation under the *McDonnell-Douglas* burden-shifting mechanism. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). An employee must show that: (1) he engaged in statutorily protected activity; (2) the employer subjected him to an adverse employment action; and (3) a causal connection exists between the two events. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008).

The indirect method allows an employee to raise an inference of retaliation with evidence that he was treated differently from those outside of his protected class. Under the indirect method, a plaintiff must establish that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse action; (3) he was meeting the agency's legitimate performance expectations; and (4) he was treated less favorably than a similarly situated employee who did not engage in protected activity. *Phelan v. Cook County*, 463 F.3d 773, 787 (7th Cir. 2006). Failure to establish any one element of the *prima facie* case is fatal to the claim. *Sublett v. John Wiley & Sons*, 463 F.3d 731, 740 (7th Cir. 2006). Once this *prima facie* case has been established, the burden of production shifts to defendant to provide a legitimate non-retaliatory reason for its action. *Gleason v. Mesirow Fin. Inc.*, 118 F.3d 1134, 1142 (7th Cir. 1997). In order to prevail, a plaintiff must then show that the defendant's non-retaliatory reasons for the adverse action were pretextual — lies to cover their real motive — and establish that a retaliatory motive was the determining factor behind the defendant's action. *Roth v. Lutheran General Hosp.*, 57 F.3d 1446, 1459 (7th Cir. 1995).

Malekpour's retaliation claims contain several of the same weaknesses found in his discrimination claims because the anti-retaliation provision protects an individual not from all retaliation, but only from retaliation that produces an injury or harm. *Burlington Northern v. White*, 548 U.S. 53, 67 (2006). A retaliation plaintiff must show that challenged action might have dissuaded a reasonable worker from making a charge of discrimination. *Id.* at 68.

Malekpour has failed to defeat summary judgment under either method of proof. Malekpour has not shown the necessary adverse actions or comparators, and cannot overcome Defendant's legitimate reasons for suspending him for 10 days for misuse of the government credit card.

**III.     Hostile Work Environment**

Under Title VII, an employer is liable for a hostile work environment if an employee can prove (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Nichols v. Michigan City Planning Dep't.*, 755 F.3d 594, 600 (7th Cir. 2014).

An objectively and subjectively offensive environment is one that a reasonable person would find hostile or abusive and one that the victim perceived to be so. *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647 (7th Cir. 2011) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). In other words, Malekpour must show that his work environment was "one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *Ellis v. CCA of Tennessee, LLC*, 650 F.3d 640, 647 (7th Cir. 2011).

The Supreme Court has instructed courts to evaluate hostility based on a "totality of the circumstances," which includes (1) the frequency of the conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely offensive; and (4) whether it unreasonably interferes with the employee's work performance. *Ellis*, 650 F.3d at 647 (quoting *Faragher*, 524 U.S. at 787-88).

Here, Malekpour's interactions with his colleagues do not come close to the level of hostility necessary to support a hostile work environment claim. No reasonable person would find his work environment hostile or abusive, in that receiving critiques from colleagues, devoid of any discriminatory animus or comments, does not create such an environment.

## CONCLUSION

For all of these reasons, I am granting Defendant's motion for summary judgment and dismissing this case in its entirety.

ENTER:

James B. Zagel
United States District Judge

DATE: August 5, 2016